**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anne Supplitt,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>    Defendant. | No. CV-13-01798-PHX-NVW<br><br>**ORDER** |

Plaintiff Anne Supplitt seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I. BACKGROUND**

Plaintiff was born in October 1957 and was 51 years old on the alleged onset date. She has a high school education. Her last full-time job was as an auto finance specialist for a bank where she worked for two years. She also worked as a night auditor and as an office manager. She has been diagnosed with fibromyalgia, osteoporosis, and sleep apnea. She has a history of chronic kidney stones and abdominal adhesions.

On September 2, 2010, Plaintiff applied for disability insurance benefits, alleging disability beginning July 1, 2009. On October 19, 2011, she appeared with her attorney[1] and testified at a hearing before the ALJ. A vocational expert also testified.

On November 21, 2011, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On September 3, 2013, Plaintiff sought review by this Court.

## II.  STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

---

[1] The ALJ hearing decision incorrectly states that Plaintiff was represented by a non-attorney representative.

- 2 -

## III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and that she has not engaged in substantial gainful activity since July 1, 2009, the alleged onset date. At step two, the ALJ found that Plaintiff has the following severe impairments: chronic kidney stones, fibromyalgia, osteoporosis, abdominal adhesions, and sleep apnea. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that

meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c) and SSR 83-10 specifically as follows: the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently; she can stand and/or walk for at least two hours but less than six hours out of an eight-hour workday with regular breaks, specifically she can stand and/or walk for four hours with standing and/or walking for no more than one hour at a time; she can sit for six hours to eight hours out of an eight-hour workday with regular breaks; she can frequently kneel, crawl, and climb ramps and stairs; she can occasionally stoop, crouch, and reach; and she has no restrictions on gross and fine manipulation or feeling.

The ALJ further found that Plaintiff is capable of performing past relevant work as a loan servicing specialist, night auditor, and office manager.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* at 830; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of

the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record).

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The opinion of any physician, including that of a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). An ALJ may reject standardized, check-the-box forms that do not contain any explanation of the bases for conclusions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight afforded a

1  non-examining physician's opinion depends on the extent to which he provides
2  supporting explanations for his opinions.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th
3  Cir. 2014).  The Commissioner is responsible for determining whether a claimant meets
4  the statutory definition of disability and does not give significance to a statement by a
5  medical source that the claimant is "disabled" or "unable to work."  20 C.F.R.
6  § 416.927(d).

### 2. Treating Rheumatologist Dr. Carolyn B. Pace

The ALJ gave little weight to three disability statements by treating rheumatologist Dr. Carolyn B. Pace because they were brief, conclusory, and inadequately supported by clinical findings; relied on Plaintiff's subjective complaints that were found only partially credible; and inconsistent with the objective medical evidence as a whole and with Plaintiff's admitted activities of daily living.  In addition, the ALJ did not consider Dr. Pace's opinion that Plaintiff is unable to work, which is an issue reserved to the Commissioner.

In a letter dated September 20, 2010, Dr. Pace said she had been treating Plaintiff for fibromyalgia since February 2007.  Dr. Pace opined:

> The patient's limitations as far as her activity include to avoiding [*sic*] any repetitive motion involving her upper or lower extremities, inability to sit for full time or even part-time job for more than half an hour without taking a 15- to 20-minute break and inability to show up on a regular basis for full-time work due to flare-ups of her condition.  The prognosis for recovery is poor and her condition will exceed to [*sic*] 12 months in duration.  I believe that the patient cannot do full-time competitive work and is, otherwise, completely disabled and the disability is expected to last greater than 12 months.

Three months earlier, on June 22, 2010, Dr. Pace's treatment notes show a "lengthy discussion" regarding whether Plaintiff should apply for Social Security disability, during which Dr. Pace suggested that she should apply and "She can still work a few hours part time with that."

On November 24, 2010, Dr. Pace completed a Multiple Impairment Questionnaire in which she wrote the comment "unable to work" in four places, such as in response to how often Plaintiff is likely to be absent from work as a result of impairments. Dr. Pace assessed Plaintiff's level of pain as 5 and level of fatigue as 8 on a scale of 0–10. Dr. Pace opined that in an eight-hour day, Plaintiff could sit only 0–1 hours and stand/walk only 0–1 hours, could not sit more than 15–20 minutes continuously, and must wait 30-45 minutes before sitting again. Dr. Pace opined that Plaintiff can never lift more than five pounds and never carry anything of any weight. She further opined that Plaintiff's experience of pain, fatigue, or other symptoms is severe enough to constantly interfere with attention and concentration and that Plaintiff is incapable of tolerating even low work stress.

In a letter dated August 9, 2011, Dr. Pace said, "Her pain, fatigue and other symptoms constantly interfere with her attention and concentration." She further stated that she had been unable to relieve Plaintiff's symptoms despite prescription treatment and joint injections. Dr. Pace opined, "The combination of Ms. Supplitt's impairments renders her unable to sit, stand or walk in any combination to sustain an eight hour day."

On July 3, 2008, Dr. Pace saw Plaintiff, and her chief complaint was "follow up for fibromyalgia." That day Dr. Pace increased Plaintiff's prescription for Lyrica. On January 27, 2009, Dr. Pace noted that Plaintiff reported "she still has ongoing pain." On June 2, 2009, Dr. Pace noted that Plaintiff reported she had been put on prednisone for severe pain and swelling in her right hand and wrist, but she did not go to urgent care. On July 10, 2009, Dr. Pace noted that Plaintiff reported increased pain, redness, peeling, and swelling in her hands, she went to urgent care, and she was prescribed prednisone. On September 23, 2009, nearly three months after Plaintiff's alleged onset of disability, Dr. Pace noted that Plaintiff reported her mother recently fell, Plaintiff has been taking care of her, and Plaintiff has been the caretaker of her mother and stepfather. She noted that Plaintiff said her prednisone had been reduced and Plaintiff felt the medication for her undifferentiated connective tissue disorder (apparently related to the problems with

her hands) was working. Dr. Pace also wrote: "The patient reports that she is going to be losing her job at Wells Fargo on 10/01/2009, and she is not sure what she is going to do about health insurance. Discussed some options."

On January 27, 2009, Dr. Pace's treatment notes show that Dr. Pace "suggested a course of physical therapy," Plaintiff said physical therapy had helped her "tremendously, but then she had to stop due to different situations that were going on in her life," and Plaintiff "would like to get back on it." On June 2, 2009, Dr. Pace noted, "She was advised to go to physical therapy, which she has not started yet."

In the letters dated September 20, 2010, and August 9, 2011, Dr. Pace identified clinical findings, such as "pain on palpitation in multiple tender points, consistent with fibromyalgia," that support her diagnoses, but depend on Plaintiff's subjective complaints of pain. She does not describe any clinical findings to support her opinions regarding limitations related to upper and lower extremities, sitting/standing/walking, or attention and concentration.

Not only were Dr. Pace's opinions inadequately supported by clinical findings, but also they relied on Plaintiff's subjective complaints that were found only partially credible, and they were inconsistent with Plaintiff's admitted activities of daily living. For example, Dr. Pace opined that Plaintiff is unable to sit for more than half an hour without taking a 15–20 minute break, yet Plaintiff reported she can drive a car and go shopping. Dr. Pace opined that Plaintiff's attention and concentration is "constantly" interfered with by her pain and fatigue, yet Plaintiff reported that she not only manages her own financial matters, she also manages her stepfather's financial matters. Dr. Pace opined that Plaintiff is incapable of carrying anything of any weight, yet Plaintiff reported doing laundry and dusting.

### 3. Treating Internist Dr. Alexis Woods

The ALJ gave little weight to the opinion of treating internist Dr. Alexis Woods because the opinion relies primarily on Plaintiff's subjective complaints that were found

only partially credible, is inconsistent with objective evidence of record and Plaintiff's admitted activities of daily living, and fails to adequately consider the evidence of record.

Dr. Woods saw Plaintiff on August 12, 2009, and on June 15, 2010, for annual examinations (well woman visits). On June 9, 2011, Dr. Woods reported that Plaintiff had been diagnosed with sleep apnea by a sleep study and with abdominal adhesions by a laparoscopic exam, but apparently before Plaintiff began treating with Dr. Woods. She opined that Plaintiff's prognosis was "guarded." Dr. Woods identified Plaintiff's primary symptoms as (1) nausea and pain with lifting more than ten pounds caused by the adhesions and (2) fatigue and difficulty with concentration caused by sleep apnea. She assessed Plaintiff's level of pain as 5–10 and level of fatigue as 5–8 on a scale of 0–10. She further stated the pain occurred daily and was not relieved by medication without unacceptable side effects. Dr. Woods opined that in an eight-hour day Plaintiff can sit only 0–1 hours and stand/walk only 0–1 hours even though Plaintiff does not claim she must lie in bed all day. She further opined that Plaintiff cannot sit more than an hour without getting up and moving around for 15–20 minutes. She opined that Plaintiff is capable of occasionally lifting and carrying no more than 0–10 pounds. Dr. Woods opined that Plaintiff does not have significant limitations in doing repetitive reaching, handling, fingering, or lifting, but also indicated she is essentially precluded from using either arm for reaching. She opined that Plaintiff's experience of pain, fatigue, or other symptoms is severe enough to frequently interfere with attention and concentration.

Dr. Woods opined that Plaintiff is severely restricted by pain and fatigue caused by abdominal adhesions and sleep apnea, two conditions that Plaintiff did not identify at the administrative hearing as limiting her ability to work. Dr. Woods appeared to be unaware of Plaintiff's fibromyalgia, and her opinion is of no value.

### 4. Consultative Examiner Dr. Donald Fruchtman

The ALJ gave great weight to the opinions of consultative examiner Dr. Donald Fruchtman, who examined Plaintiff on November 30, 2010. The ALJ stated that she gave great weight to Dr. Fruchtman's opinions because he had opportunity to examine

Plaintiff and review her medical history and because his opinions are reasonable and consistent with Plaintiff's treatment history, the objective medical evidence of record, and Plaintiff's admitted activities of daily living.

Dr. Fruchtman's report states that Plaintiff said she spends a lot of time on the computer, tires easily, and is able to do housework and general things in the house if she gets enough rest. Dr. Fruchtman reported that Plaintiff was able to walk without assistance, sit comfortably, get on and off the examination table, take off her shoes, and put her shoes back on. He found limited range of motion in both cervical and dorsal spine, both shoulders, and in the left hip. Although Plaintiff had some limited movements due to discomfort, he found normal range of motion bilaterally in Plaintiff's knee, ankle, elbow, and wrist joints. Dr. Fruchtman noted typical signs of fibromyalgia at trigger points. He found good motor strength and muscle bulk and tone despite some discomfort. He opined that Plaintiff can stand or walk four hours in an eight-hour workday, limited to no more than an hour or two at one time, and sit 6–8 hours in an eight-hour workday. He assessed Plaintiff's maximum lifting capacity as 50 pounds occasionally and 25 pounds frequently. He opined that Plaintiff can frequently climb, kneel, and crawl and occasionally stoop, crouch, and reach. Dr. Fruchtman opined that Plaintiff is capable of unrestricted handling, fingering, and feeling.

Plaintiff contends Dr. Fruchtman's clinical findings are not significantly different from those of treating sources, and he merely reached a different opinion from the same clinical findings. But the clinical findings Dr. Pace reported did not include range of motion, muscle strength, or observations of Plaintiff's movements. Dr. Pace reported only pain on palpitation at trigger points, blood test results consistent with connective tissue disease and systemic lupus erythematosus, and a Fibromyalgia Impact Questionnaire score (based on self-reported symptoms) in the moderate to mild severity range. Dr. Pace made clinical findings relevant to diagnosing and treating Plaintiff, but she did not make clinical findings necessary for assessing Plaintiff's functional capacity.

### 5. Non-Examining State Agency Medical Consultants

The ALJ gave significant weight to the opinions of the State agency review physicians who opined Plaintiff could perform a range of medium work, but gave more weight to Dr. Fruchtman's opinion. Because the ALJ assessed a more restrictive residual functional capacity than that opined by non-examining State agency review physicians, any weight she gave to their opinions could not have caused any prejudice to Plaintiff.

Therefore, substantial evidence supports finding that the ALJ provided clear, convincing, specific, and legitimate reasons for discrediting portions of treating physicians' contradicted medical assessments.

### B. The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.*

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. The ALJ made findings regarding inconsistencies

between Plaintiff's testimony and her daily activities, her work record, and the objective medical evidence.

In her Function Report, Plaintiff said that her ability to work was limited by tingling, pain, and stiffness from her shoulders to her fingertips, frequent nausea, cramps, fatigue, and difficulty concentrating, standing, sitting, and walking. She reported that on bad days she goes from the bed to the couch, and on good days she gets dressed, uses the computer, makes telephone calls, does paperwork, and tries to clean something each day. She can vacuum, dust, and do laundry, but not for very long at one time. She said she does paperwork and makes phone calls for her stepfather to pay his bills, manage his bank account, etc. She cares for a dog by bathing, cutting nails, and giving daily medicine. She is able to prepare sandwiches and microwaveable meals once or twice a day. Plaintiff reported that she reads, drives a car, shops for groceries and medicine, and tries to see other people once a week. She also reported that she can manage her own finances and personal care independently. She said she no longer can bake, knit, or sew because her hands are sore and stiff all of the time. She reported that her medications cause dizziness and drowsiness.

At the administrative hearing, Plaintiff testified that she spends an average of two hours a week doing house cleaning. She said she has good and bad days; on bad days she watches television, and on good days she does cleaning, goes out to eat with friends, and/or talks on the phone. She usually checks her email daily, spending 15–30 minutes on the computer. Plaintiff testified that she is unable to work because she has difficulty concentrating and because pain makes lifting, moving, standing, and walking difficult. She also said she has approximately four or five dizzy spells and two headaches per week, which are sometimes accompanied by sensitivity to light or noise.

The ALJ found that some of the physical and mental abilities and social interactions required to perform the activities that Plaintiff reports being able to do are the same as those necessary for obtaining and maintaining employment. The ALJ concluded

that Plaintiff's ability to participate in such activities undermined the credibility of her allegations of disabling functional limitation.

The ALJ also found that Plaintiff's failure to follow prescribed treatment without a good reason demonstrated possible unwillingness to improve her condition and/or that her symptoms were not as severe as she claimed. The ALJ specifically noted that Plaintiff declined treatment for her kidney stones, stopped going to physical therapy, and took her medications intermittently. The ALJ stated that treatment notes showed that Plaintiff reported minimal side effects to her medications other than weight gain, and her medications were adjusted after she complained to her doctors. The ALJ also noted that Plaintiff's fibromyalgia was reported as stable and she had reduced symptoms with adherence to her treatment regimen.

Regarding Plaintiff's work record, the ALJ stated that the record indicates that Plaintiff stopped working because of a personal decision rather than because of the allegedly disabling impairments. She reported to the psychological consultative examiner that she was given personal leave from her last job when her father died and her mother was sick, but she could not go back and therefore was terminated. She said she had not worked since then because she was "trying to get everything together." At the administrative hearing, Plaintiff testified that both of her parents died in the same year, and she "took personal time." She said another reason for not going back was that her pain level "was seven, eight, nine, 24/7." When the ALJ asked, "Did you get fired or did you quit?" Plaintiff said: "Well, they said that I had to be back, physically working on October 1st but, my position was no longer there. So I had to be in another position or they were going to terminate me." The ALJ asked what Plaintiff did then, and she responded, "I couldn't go back so they terminated me." The ALJ reasoned that Plaintiff was adequately performing her job despite her chronic medical conditions before July 1, 2009, she quit primarily for personal reasons, there is no evidence of significant deterioration in her conditions around July 1, 2009, and therefore it is reasonable to infer that Plaintiff's impairments now would not prevent performance of the job she quit.

Thus, the ALJ did not reject Plaintiff's subjective complaints based solely on a lack of objective corroborating evidence, but also by weighing inconsistencies between the her testimony and her conduct, daily activities, and work record. Substantial evidence supports finding that the ALJ provided specific, clear, and convincing reasons for partially discrediting Plaintiff's subjective symptom testimony.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 10th day of October, 2014.

_____
Neil V. Wake
United States District Judge